### GEORGE C. WHIPPLE

*v.*

### FRANCES A. GIBSON.

*Filed at Ottawa October 11, 1895.*

1. CLOUD—*on title can only be removed by owner.* A complainant in a bill to remove a cloud upon title must prove his ownership of the property.

2. DEEDS—*when no title will pass by a second conveyance.* No title passes by a conveyance, without any new consideration, to the purchaser of lands or his mere nominee, where the equitable title had previously passed under the purchase to another person by a conveyance which failed to describe the land correctly.

3. PRACTICE—*in chancery—dismissal of original bill—hearing upon cross-bill.* The dismissal of the original bill in a suit to remove cloud from title may leave the litigation to be carried on upon the cross-bill and answer thereto, especially if the parties are allowed to amend the same.

APPEAL from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

CUTTING, CASTLE & WILLIAMS, for appellant:

The plaintiff must first show in himself some right, legal or equitable, in the premises, before he can call in question the validity of the title of the defendant. *Stark* v. *Starrs,* 6 Wall. 402.

If a complainant have no title he cannot have a cloud removed therefrom. *Hopkins* v. *Granger,* 52 Ill. 504; *West* v. *Schnebly,* 54 id. 523; *Hutchinson* v. *Howe,* 100 id. 11.

Preliminary to any relief, in any view of the case, it must be proven that complainant is the owner of the real estate in controversy. By the pleadings his title is put directly in issue, and the burden of proof rests upon him to maintain it. *Wing* v. *Sherrer,* 77 Ill. 200; *Ritchie* v. *Pease,* 114 id. 353.

PECK, MILLER & STARR, for appellee:

To determine the question as to the purpose for which the deed was in fact made, the court will look not only

at the direct testimony of witnesses, but at all the facts and circumstances. *Miller* v. *Thomas*, 14 Ill. 428; *Ruckman* v. *Alwood*, 71 id. 155; *Darst* v. *Murphy*, 119 id. 343.

The deed was entirely inoperative to convey any title, legal or equitable, to this land. The record thereof would not even charge a subsequent purchaser with any notice through any recitals therein. *Cunningham* v. *Thornton*, 28 Ill. App. 58.

Without reformation, and until reformed, the deed could convey no title to this land. *Ritchie* v. *Pease*, 114 Ill. 353; *Cunningham* v. *Thornton*, 28 Ill. App. 58; *Kurtz* v. *Hibner*, 55 Ill. 514; *Campbell* v. *Johnson*, 44 Mo. 247.

The contracts of sale made by Whipple to Bartlett and to Hoffman (which were placed on record) constitute clouds on complainant's title. *Rigdon* v. *Shirk*, 127 Ill. 411.

This is a proper case for this bill of complaint to quiet appellee's title. Rev. Stat. chap. 22, sec. 50.

The deed to Whipple could not be reformed in favor of the defendants upon the original bill and answer thereto, but only upon the cross-bill. This would be true even if the original bill were to reform the deed and the defendants also claimed reformation in another and distinct particular. *White* v. *White*, 103 Ill. 438.

The deed to Whipple, as we have seen, conveyed no title, and it was not even constructive notice. *Cunningham* v. *Thornton*, 28 Ill. App. 58.

Notwithstanding that deed, the title stood of record in Mrs. Hertel until the deed from her to Mrs. Gibson was recorded, and every one dealing with Whipple (who had no legal title) did so as one dealing with a mere equity, and therefore subject to all infirmities. *Maghee* v. *Robinson*, 98 Ill. 458; *Fortier* v. *Darst*, 31 id. 212; *Sumner* v. *Waugh*, 56 id. 531.

Whipple held the title, as did Trunkey, by way of mortgage, as security or indemnity. That may be shown by parol, and such a trust is not within the Statute of Frauds. *Miller* v. *Thomas*, 14 Ill. 428; *Ruckman* v. *Alwood*,

71 id. 155; *Workman* v. *Greening,* 115 id. 477; *Pearson* v. *Pearson,* 131 id. 464.

The consideration paid belonged to Felton,—not Whipple; and if the title had been conveyed to Whipple a trust would have resulted. *Bruce* v. *Roney,* 18 Ill. 67; *Emmons* v. *Moore,* 85 id. 304; *Smith* v. *Smith,* id. 189; *Williams* v. *Brown,* 14 id. 202; *Reynolds* v. *Sumner,* 126 id. 58; *Graham* v. *Richardson,* 128 id. 178; *Insurance Co.* v. *White,* 106 id. 73; *Wallace* v. *Carpenter,* 85 id. 590; *McNamara* v. *Garrity,* 106 id. 418.

Mr. JUSTICE WILKIN delivered the opinion of the court:

E. C. Felton owned No. 18 Union Park Place, in the city of Chicago, the title being in Hiram C. Kittridge, and on March 10, 1887, caused it to be conveyed to Jerome H. Trunkey, taking back an agreement in writing to the effect that the property was held in trust, subject to Felton's order, less any obligations due him at any time before re-transferring the same. On March 17, 1888, Trunkey and wife conveyed the same, by quit-claim deed, to George C. Whipple. About March 15, 1889, Mrs. Christina Hertel owned block 1, in the subdivision of L. C. P. Freer, of the west half of the south-east quarter of section 33, township 38, north, range 14, east of the third principal meridian, in the town of Lake, Cook county, Illinois. This property was traded for the Union Park Place property, which Whipple deeded to Mrs. Hertel. At the same time she executed and delivered to Whipple a deed intended to convey said block 1, but which, by mistake, described it as being in the "south-west quarter" instead of the "south-east quarter" of section 33, etc. This deed was executed, recorded and acknowledged on March 15, 1889. Felton claims that he continued to be the owner of the Union Park Place lot, Whipple holding it in trust for him the same as Trunkey had done, and that he made the exchange with Mrs. Hertel, Whipple conveying to her by his directions, and receiving the deed to block 1 in trust for him on the same terms as he had

held the Union Park Place lot.   He afterwards discov-
ered the mistake in the last named deed, and procured
from Mrs. Hertel another, conveying the premises, by
correct description, to Frances A. Gibson.   This deed
was dated March 14, 1889, but was not acknowledged
until August 9, 1889.   It was recorded April 15, 1890.   On
the tenth of January, 1893, this bill was filed in the name
of Mrs. Gibson, as complainant, to remove the former
deed to Whipple, and certain contracts by him, as clouds
upon her title.   Whipple answered, denying the com-
plainant's title to the premises, and also filed a cross-bill
setting up title thereto in himself, and praying that the
mistake in the deed to him be corrected and his title con-
firmed.   Upon the hearing the court granted the prayer
of the original bill, but gave Whipple a lien upon the
premises for $154 and interest from July, 1890, and or-
dered the complainant to pay the same.   The cross-bill
of Whipple was dismissed for want of equity.

The decree below is manifestly erroneous in granting
the relief prayed in the original bill.   Nothing is better
settled than that a complainant in a bill to remove a
cloud upon title must prove his ownership of the prop-
erty.   The evidence in this case shows that Mrs. Gibson
is not the real owner of the property in question, and
that she neither has, nor claims to have, any interest in
this suit.   On the contrary, it is perfectly clear that
E. C. Felton is the real party in interest, and that he is
simply seeking to use the name of Mrs. Gibson to settle
a controversy between himself and George C. Whipple.
Felton himself testified : "I purchased the premises in
question from Mrs. Hertel.   I had it deeded to Mrs. Gib-
son because it was non-productive, speculative property,
with the expectation that if anything did happen to me—
that I should be taken away—she should have the prop-
erty.   As between us it was a gift.   I am under obliga-
tion to her for many kindnesses, and I intend to give her
that property whenever I am through with it, or if I

should be taken away I want her to have that property.
I deeded her the property for that reason.    She lives in
Denver, Colorado.    I took possession of it January 6,
1873, by building a wire fence, and posting sign with this
writing:    'Gibson, by Felton, Agt.'    The deed was made
at my suggestion.    I made no other deed to Mrs. Gibson.
I found that a mistake had been made in a former deed
from Mrs. Hertel to Whipple ; then I went and got this
deed made from Mrs. Hertel to Mrs. Gibson.    No consid-
eration passed to Mrs. Hertel for the deed to Mrs. Gib-
son.    The consideration all passed at the time the first
deed to Whipple was made.    That deed was never in the
control of Mrs. Gibson nor in her actual possession.    I
presume I had it in my possession from August, 1889, to
April 15, 1890.    When I had that deed made I had found
the error in the Whipple deed.    I never called Whipple's
attention to that fact.    I never suggested, in all the talk
about the sale, that there was any reason why he couldn't
make it,—that his deed was defective.    He never knew
it till he got the abstract.    I am the same Felton who
was co-complainant in the original bill, frequently men-
tioned in this case."

It is manifest from his own testimony that Felton in-
stituted not only the former suit, but also this one, and
that it is for his sole benefit, and not that of Mrs. Gibson.
It is also clear, that even if he had taken the second deed
from Mrs. Hertel to himself and filed this bill in his own
name he could not maintain it, on his *own* testimony.    He
admits that the intention of all parties was to place the
title in Whipple by the first deed from Mrs. Hertel, and
that the mistake in the description of the property was
a mutual one.    Whether he consented to that conveyance
for the purpose of placing the title in Whipple in trust
for himself, as he claims, or to secure Whipple in the
payment of indebtedness due him, he had no right to
attempt to take advantage of the mistake in the manner
he did, and then ask a court of equity to help him carry

out his scheme by setting aside the former deed. On his own theory of the case he has a plain and adequate remedy against Whipple to compel him to perform his trust. The deed from Mrs. Hertel to Whipple conveyed the equitable title to him, and her subsequent deed to a party having full knowledge of the former conveyance and the mutual mistake therein is entitled to no consideration whatever in a court of equity. The original bill should have been dismissed for want of equity.

We cannot say the order dismissing the cross-bill was not authorized by the evidence, but we are unable to see why the rights of Felton and Whipple, the real parties to this litigation, may not be adjusted upon the cross-bill and answer thereto, especially if the parties are allowed to amend the same. By his own showing Whipple is not the absolute owner of the property, but holds the title thereto in the nature of a mortgage. He claims that the deed from Trunkey to him for the Union Park Place property was upon the consideration of his surrendering to Felton his promissory note for $940 and the payment of $1500 in money, and says he at the same time gave Felton an agreement in writing, as follows:

"CHICAGO, *March 16, 1888.*

"I hereby agree to deed the house and lot known as 18 Union Park Place, in the city of Chicago, to the order of E. C. Felton, on or before the first day of May, A. D. 1888, on said Felton paying me $2500, the above place being the same I received deed of from J. H. Trunkey this day.

"Dated this 16th day of March, 1888.

G. C. WHIPPLE."

He also says, speaking of the trade for the property in litigation: "I had been advertising the Union Park Place property a great deal. I wanted to get my money out of it. It wasn't a profitable property, and I had the incumbrance renewed on it twice. Felton brought in some property to trade for it, but I wasn't satisfied with

it. About the last of February he brought in this Eighty-third street property. I told him I would investigate it, and I did so, and became satisfied it would be a good deal, and told him so. I told him to fetch in his man. He said Mr. Hertel, the son of the owner, was a young fellow, and he said he could handle him a good deal better than I could. I told him to go ahead and I would make the deal. He brought in a contract on March 1, and I signed it. Felton wanted to know what he was going to get out of it, and I told him if he would go ahead, take care of this piece of property, pay the taxes on it, see to the whole thing, and try to get a customer as quick as he could for it, after deducting the money which I had paid in, with interest and expenses, we would divide the remainder equally. I did this because my health was poor, and I had a great deal of real estate at the time. Felton said he was satisfied with it. Felton never claimed to be the owner of either piece of property up to this time." Of course, all this is denied by Felton, his claim being that he received no consideration whatever from Whipple for the conveyance to him of the Union Park Place property, but that it was simply placed in his name in trust. A controversy of fact so bold and irreconcilable is seldom met with in the consideration of cases, and yet there is testimony in the record tending to support both contentions. If further proceedings are had in the cause it should be referred to a master to state his conclusion upon the evidence, and either party should be allowed to introduce additional testimony, if desired.

The decree below will be reversed and the cause will be remanded to the Superior Court, with directions to dismiss the original bill at the cost of the complainant therein, and for further proceedings upon the cross-bill not inconsistent with this opinion.

*Reversed and remanded.*